**NOT FOR PUBLICATION**

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

DARIN HICKSON,                          :

                                        :        Civil Action No. 06-3817 (PGS)

            Petitioner,      :

                                        :

            v.               :        **OPINION**

                                        :

LYDELL B. SHERRER, et al.,   :

                                        :

            Respondents.     :


**APPEARANCES:**

     DARIN HICKSON, Petitioner <u>Pro Se</u>
     # 2485661
     Northern State Prison
     E300 West #413
     168 Frontage Road
     Newark, New Jersey 07114

     MICHAEL J. WILLIAMS, ESQ.
     Office of the New Jersey Attorney General
     Appellate Bureau
     P.O. Box 086
     Trenton, New Jersey 08625
     Counsel for Respondents

**SHERIDAN**, District Judge

This matter is before the Court on Petitioner Darin Hickson's petition for habeas corpus relief under 28 U.S.C. § 2254. For reasons discussed below, the petition for habeas corpus relief will be denied for lack of merit.

I.   BACKGROUND

A.  Statement of Facts

The facts of this case were recounted below and this Court, affording the state court's factual determinations the appropriate deference, see 28 U.S.C. § 2254(e)(1), will simply reproduce the Appellate Division's factual recitation, as set forth in its July 8, 1996 unpublished Opinion on petitioner's direct appeal from his conviction:

> The murder for which defendant has been convicted was committed on May 2, 1992, during the course of a robbery of Bruno's Jewelers, a store located in Garfield.  The victim, who was the owner of the store, was stabbed in the chest.  Before his death, the victim activated a security device in the store, and the security monitoring company phoned the store less than a minute later.  When asked for a security code, the person answering the call immediately hung up.  However, the brief call was recorded by the security company, capturing the voice of the person who presumably was the perpetrator.
>
> When the police arrived at the scene, they found the victim in the back of the store, where he apparently had been dragged.  The police also observed that two of the five showcases in the store had been smashed, that some pieces of jewelry seemed to be missing and that other pieces were either on the floor or in disarray in the showcases.
>
> On that same afternoon, Marybeth Skawinski, age 11, and her brother Michael John Skawinski, age 10, were playing outside in defendant's neighborhood.  They observed defendant walking to his residence, where he lived with his sister and brother-in-law, and noticed that he had blood on his right arm, dried blood on his left arm and was carrying a duffle bag.  Shortly after entering the house, the children observed defendant and his sister's family get into their car and drive off.
>
> After learning of the robbery in the next day's paper, the children's parents, Deborah Ann Skawinski and her husband Michael Emil Skawinski, contacted the police.  They

2

subsequently were brought in and asked to listen to the tape recording made by the security company during the robbery. Both Skawinskis identified the voice on the tape as that of defendant.  In addition, a police forensic investigation of the murder scene revealed defendant's fingerprints on one of the showcases in the store.

The police subsequently interviewed defendant's brother-in-law, who stated that defendant had confessed to committing the crime and asked for a ride to New York City.  Wagner also stated that he observed a knife on defendant's person as they were driving to New York.  In addition, Wagner stated that after taking defendant to New York, he found rings in the car, which he subsequently sold.  At trial, however, Wagner recanted much of his previous statement to the police.

Some time later, defendant was arrested in New York, along with a companion, Edward Broom, who testified at trial that defendant had admitted committing the robbery and murder.

Defendant testified on his behalf that he had stopped by the victim's jewelry store on May 2 to purchase wedding jewelry while en route to his fiancé's residence in Syracuse.  As he entered the store, he observed a black male leaving.  He then stepped into the store, and upon finding broken glass, leaned over the display case looking for the owner.  He observed a bloodstain leading to the owner, who was already dead.  Defendant immediately left the store to call police from a pay phone outside, but saw that the police were already responding.  Concerned that he would be arrested for parole violations and on bench warrants if he remained, defendant fled the scene.  Upon returning to his sister's house, he noticed minor cuts on his right arm.

After considering the evidence, the jury found defendant guilty of aggravated manslaughter, felony murder, robbery, and possession of a weapon for an unlawful purpose.

B.  <u>Procedural History</u>

Petitioner, Darin Hickson ("Hickson"), was indicted by a Bergen County Grand Jury on December 20, 1992, on the following charges: (Count One) first degree murder in violation of <u>N.J.S.A.</u> 2C:11-3(a)(1,2); (Count Two) felony murder in violation of

3

N.J.S.A. 2C:11-3(a)(3; (Count Three) first degree robbery in violation of N.J.S.A. 2C:15-1; and (Count Four) possession of a weapon for an unlawful purpose in violation of N.J.S.A. 2C:39-4(d).  (Ra1, Petitioner's brief and appendix on direct appeal).[1]

Trial took place from January 6th through January 26th, 1994, before the Honorable Jonathan N. Harris, J.S.C. and a jury. During the trial, petitioner moved for a mistrial because a juror's brother had witnessed petitioner in handcuffs and leg-irons.  Judge Harris denied the motion.  The jury found Hickson guilty on the lesser included offense of aggravated manslaughter under Count One and on the remaining counts of the indictment. On May 13, 1994, the trial court sentenced Hickson to a term of life imprisonment with a mandatory minimum term of thirty years.

On or about July 20, 1994, petitioner filed a direct appeal before the Superior Court of New Jersey, Appellate Division, challenging his conviction and sentence.  The Appellate Division affirmed the conviction and sentence in an unpublished opinion filed on July 8, 1996.  (Ra4).  The New Jersey Supreme Court denied certification on October 30, 1996.  (Ra7).

On July 18, 1997, Hickson filed his first state court petition for post-conviction relief ("PCR").  The PCR court denied the petition without a hearing, and petitioner appealed to

---

[1]  The voluminous state court record relevant to this matter is designated by reference to the Respondents' Appendix ("Ra").

the Appellate Division.  On October 18, 1999, the Appellate Division remanded the matter to the PCR court to hold an evidentiary hearing on the issue of whether an alleged improper communication from a Sheriff's officer to a juror occurred before or after the jury returned its verdict.  An evidentiary hearing was conducted on December 21, 1999 and February 7, 2000.  The PCR court denied Hickson's petition in an oral opinion rendered on February 7, 2000.  (Ra50, February 7, 2000 transcript 18:14-19:23).  Hickson again appealed the PCR court decision.  The Appellate Division affirmed the denial of post-conviction relief in an unpublished opinion filed on April 19, 2001.  (Ra11).  The Supreme Court of New Jersey denied certification on July 16, 2001.  (Ra15).

Hickson then filed his second state court PCR petition on or about August 23, 2001.  (Ra16 at pg. 3).  In a letter opinion dated April 18, 2002, the PCR court denied relief.  Hickson appealed.  (Ra16).  On October 31, 2003, the Appellate Division affirmed the PCR court's denial of Hickson's petition.  (Ra19).  The New Jersey Supreme Court denied certification on March 25, 2004.

In July 2004, Hickson filed his third state court PCR petition.  On September 28, 2004, the PCR court dismissed the third petition as time-barred.  Hickson moved for reconsideration, but his motion was denied on October 13, 2004.

Petitioner then appealed.  On January 26, 2006, the Appellate Division summarily dismissed Hickson's appeal pursuant to a motion by the State.  The New Jersey Supreme Court denied certification on April 28, 2006.  Hickson sought reconsideration, but the New Jersey Supreme Court denied reconsideration by Order entered on June 23, 2006.

Hickson filed this federal habeas petition under 28 U.S.C. § 2254 on or about August 7, 2006.  The State filed an answer with a copy of the relevant state court record on January 11, 2007.  (Docket Entry No. 9).  Hickson filed a traverse or reply brief on or about June 22, 2007.  (Docket Entry No. 12).

## II.  STATEMENT OF CLAIMS

In his habeas petition, Hickson raises the following claims for habeas relief:

Ground One: Ineffective assistance of trial counsel in failing to investigate witnesses and the crime scene and to raise viable defenses.

Ground Two: Ineffective assistance of trial counsel in failing to challenge an invalid and deficient complaint that lacked probable cause.

Ground Three: Ineffective assistance of trial counsel for failing to challenge the illegal and warrantless arrest of petitioner made without probable cause.

Ground Four: Ineffective assistance of trial counsel in failing to move to suppress evidence illegally obtained as a result of the illegal and warrantless arrest.

Ground Five: Ineffective assistance of trial counsel in failing to object to prosecutor's introduction of "devastating inadmissible hearsay evidence.

Ground Six: Ineffective assistance of trial counsel in failing to request curative instruction to jury regarding the inadmissible evidence.

Ground Seven: Ineffective assistance of trial counsel for failing to challenge the indictment as invalid because it had not been endorsed.

Ground Eight: The trial court committed harmful error in failing to prevent the prosecutor from presenting inadmissible evidence at trial.

Ground Nine: The trial court deprived petitioner of due process and a fair trial when instructing the jury that they could find petitioner guilty of all charges or not guilty of all charges.

Ground Ten: Ineffective assistance of trial counsel for failing to challenge the falsified information used to obtain the search warrant.

Ground Eleven: The trial court erred by permitting into evidence the transcript of a taped conversation and the tape itself.

Ground Twelve: Ineffective assistance of trial counsel for failing to bring to the attention of the jury that the blood DNA evidence tested did not match petitioner.

Ground Thirteen: The trial court erred in admitting into evidence a certain photograph of the victim, violating petitioner's right to a fair trial.

Ground Fourteen: Petitioner was denied his right to a fair trial when a sheriff's officer told a jury member that petitioner was trying to cut a deal.

Ground Fifteen: The New Jersey Appellate Division erred in adjudicating petitioner's ineffective assistance of counsel claims without first conducting an evidentiary hearing.

Ground Sixteen: Ineffective assistance of appellate counsel for failing to raise meritorious issues within the trial record on direct appeal.

Ground Seventeen: Ineffective assistance of PCR counsel for failing to investigate, failing to raise meritorious issues, and failing to inspect the complete trial record.[2]

---

[2] Ground Seventeen will be denied pursuant to 28 U.S.C. § 2254(i).

8

Ground Eighteen: Petitioner was denied due process as a result of the suggestiveness of the pretrial voice identification.

Ground Nineteen: These cumulative errors deprived petitioner of a fair trial and due process.

Ground Twenty: The trial court erred in denying petitioner's motion for a new trial.

Ground Twenty-One: Improper influences within the jury deprived petitioner of his right to a fair trial by an impartial jury.

Ground Twenty-Two: The state PCR court erred in denying petitioner an evidentiary hearing on the ineffective assistance of counsel claims.

Ground Twenty-Three: The state PCR court erred in procedurally barring petitioner's second and third state PCR petitions.

Ground Twenty-Four: The state court erred in time-barring petitioner's second and third PCR petitions.

The State answered the petition asserting several affirmative defenses.  First, the State argues that the petition is time-barred.  Second, the State asserts that Hickson has failed to exhaust his state court remedies with respect to the claims asserted in Grounds Three, Four, Ten, Eleven, Thirteen, Fifteen, Eighteen, Nineteen, and Twenty through Twenty-three.

9

Third, the claims asserted in Grounds One, Two, Three, Five, Six, Seven, Eight, Nine, Sixteen, Seventeen, Twenty-Three and Twenty-Four of the habeas petition are procedurally defaulted.  Finally, the State argues that petitioner's claims are without merit or do not state a cognizable federal claim involving a federal constitutional violation.

### III.   STATUTE OF LIMITATIONS

The limitation period for a § 2254 habeas petition is set forth in 28 U.S.C. § 2244(d), which provides in pertinent part:

> (1) A 1-year period of limitations shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of–
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review; ...
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this section.

Section 2244(d) became effective on April 24, 1996 when the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") was signed into law.  See Burns v. Morton, 134 F.3d 109, 111 (3d Cir. 1998); Duarte v. Herschberger, 947 F. Supp. 146, 147 (D.N.J. 1996).  The Third Circuit has ruled that state prisoners whose convictions became final before the April 24, 1996 enactment of AEDPA are permitted one year, until April 23, 1997, in which to file a federal habeas petition under § 2254.  See Burns, 134 F.3d

10

at 111.  See also Lindh v. Murphy, 521 U.S. 320, 326-27
(1997)("[t]he statute reveals Congress' intent to apply the
amendments to chapter 153 only to such cases as were filed after
the statute's enactment").

Thus, pursuant to § 2244(d), evaluation of the timeliness of
a § 2254 petition requires a determination of, first, when the
pertinent judgment became "final," and, second, the period of
time during which an application for state post-conviction relief
was "properly filed" and "pending."

A state-court criminal judgment becomes "final" within the
meaning of § 2244(d)(1) by the conclusion of direct review or by
the expiration of time for seeking such review, including the 90-
day period for filing a petition for writ of certiorari in the
United States Supreme Court.  See Swartz v. Meyers, 204 F.3d 417,
419 (3d Cir. 2000); Morris v. Horn, 187 F.3d 333, 337 n.1 (3d
Cir. 1999); U.S. Sup. Ct. R. 13.

As noted above, where a conviction became final prior to
April 24, 1996, the effective date of § 2244(d), a state prisoner
has a one-year grace period after that effective date to file a
§ 2254 petition.  Burns, 134 F.3d at 111.  However, that
limitations period is tolled during the time a properly filed
application for state post-conviction relief is pending.  28
U.S.C. § 2244(d)(2).  An application for state post-conviction
relief is considered "pending" within the meaning of

11

§ 2244(d)(2), and the limitations period is statutorily tolled, from the time it is "properly filed," during the period between a lower state court's decision and the filing of a notice of appeal to a higher court, Carey v. Saffold, 536 U.S. 214 (2002), and through the time in which an appeal could be filed, even if the appeal is never filed, Swartz v. Meyers, 204 F.3d at 420-24. Nevertheless, § 2244(d)(2) does not toll the one year statute of limitations during the pendency of state prisoner's petition for writ of certiorari in the United States Supreme Court. See Lawrence v. Florida, __ U.S. __, 127 S.Ct. 1079, 1083 (2007); Stokes v. District Attorney of the County of Philadelphia, 247 F.3d 539, 542 (3d Cir.), cert. denied, 534 U.S. 959 (2001).

Here, Hickson's conviction under challenge became final on or about January 30, 1997, after AEDPA became effective.  Thus, Hickson had one year from January 30, 1997, or until January 30, 1998, to timely file his federal habeas petition.

This Court finds that the limitations period was statutorily tolled pursuant to 28 U.S.C. § 2244(d)(2), on July 18, 1997, when Hickson timely filed his first state PCR petition.  Thus, the limitations period remained tolled until July 16, 2001, when the Supreme Court of New Jersey denied certification on Hickson's appeal from denial of his first properly filed state PCR petition.

12

Hickson contends, however, that the limitations period was statutorily tolled again, on August 23, 2001, when he filed his second state PCR petition.  This tolling would thus remain in effect until March 25, 2004, when the Supreme Court of New Jersey denied certification on Hickson's appeal from denial of his second PCR petition.

In or about July 2004, Hickson filed yet a third state PCR petition.[3]  Hickson argues that his third state PCR petition continued to toll his statute of limitations until the Supreme Court of New Jersey denied reconsideration of the petition on June 23, 2006.  Hickson filed his habeas petition on or about August 7, 2006.  Considering the statutory tolling, Hickson maintains that his federal habeas petition is timely filed.[4]

---

[3]  The record does not provide the exact date when Hickson filed his third state PCR petition.  Giving petitioner the benefit of all favorable inferences, the Court will presume that the third state PCR petition was filed on or about July 1, 2004.  Thus, from March 25, 2004 to July 1, 2004, 97 days had elapsed on petitioner's one-year statute of limitations.

[4]  If this Court accepts that all of Hickson's state PCR petitions were properly filed and did serve to toll the limitations period under 28 U.S.C. § 2244(d)(2), then his federal habeas petition would be timely given the following calculations. Hickson's first state PCR was filed on July 18, 1997, before his statute of limitations had started to run.  Consequently, the statute of limitations was tolled for the period of time that the first state PCR petition was pending, from July 18, 1997 to July 16, 2001, when the Supreme Court of New Jersey denied certification on Hickson's appeal from denial of his first state PCR petition.  The limitations period would have run from July 16, 2001 until August 23, 2001 (a total of 38 days), when Hickson filed his second state PCR petition.  If the second state PCR petition was properly filed, then the statutory period would be

The State argues that the petition is time-barred and must be dismissed because it was filed more than one year after the state court proceedings became final.   The State contends that there was no statutory tolling of the limitations period during the time that Hickson's second and third state PCR petitions were pending because these petitions were untimely, and therefore, not "properly filed."   See Pace v. DiGuglielmo, 544 U.S. 408, 412-19 (2005); Carey v. Saffold, 536 U.S. 214, 216, 219-27 (2002); Satterfield v. Johnson, 434 F.3d 185, 191-95 (3rd Cir.), cert. denied, __ U.S. __, 127 S.Ct. 198 (2006); Merritt v. Blaine, 326 F.3d 157, 159-68 (3d Cir.), cert. denied, 540 U.S. 921 (2003).

The statute of limitations under § 2244(d) is subject to two tolling exceptions: (1) statutory tolling during the time a "properly filed" application for state PCR or collateral review

---

tolled during the pendency of the petition in state court, which did remain pending until March 25, 2004, when the Supreme Court of New Jersey denied certification on Hickson's appeal from denial of his second PCR petition.  On March 25, 2004, the statute of limitations began to run again for an additional 97 days, until July 2004 when Hickson filed his third state PCR petition.  If the third petition was properly filed, then the statute of limitations would toll again until the third petition was resolved.  In this case, the New Jersey Supreme Court denied reconsideration of the third petition on June 23, 2006.  Thus, the limitations period started to run again on June 23, 2006. Given the one year limitations period (365 days), less the time that had run on the limitations period (38 + 97 = 135 days), Hickson had 230 days (365 - 135 = 230 days), or until February 9, 2007 to timely file his federal habeas petition.  He filed his federal habeas petition on or about August 7, 2006, well within the time limit, if the second and third state PCR petitions were properly (timely) filed.

is pending in state court and (2) equitable tolling, a judicially crafted exception.  See Merritt, 326 F.3d at 161 (citing Jones v. Morton, 195 F.3d 153, 158 (3d Cir. 1999); Miller v. N.J. State Dep't of Corr., 145 F.3d 616, 617-18 (3d Cir. 1998).

　　1.  *Statutory Tolling*

　　Section 2244(d)(2) provides, in relevant part, that "[t]he time during which a **properly filed** application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."  28 U.S.C. § 2244(d)(2)(emphasis added).  An application is "filed" when "it is delivered to, and accepted by, the appropriate court officer for placement into the official record."  Artuz v. Bennett, 531 U.S. 4, 8 (2000)(citations omitted).  In Artuz, the Supreme Court held that time limits on state PCR petitions are "condition[s] to filing," such that an untimely petition would not be deemed "properly filed."  Id., 531 U.S. at 8, 11.

> And an application is "properly filed" when its delivery and acceptance are in compliance with the applicable laws and rules governing filings. These usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee ... .  In some jurisdictions the filing requirements also include, for example, preconditions imposed on particular abusive filers, or on all filers generally ... .  But in common usage, the question whether an application has been "properly filed" is quite separate from the question whether the claims contained in the application are meritorious and free of procedural bar.

<u>Artuz</u>, 531 U.S. at 8-9 (footnotes and citations omitted)(emphasis added).

Thus, the key distinction developed in <u>Artuz</u> is between (1) "condition[s] to filing", which go to the application for state collateral review, and (2) "condition[s] to obtaining relief", which go to the merits of the legal claims contained in the application for review. Failure to satisfy the first condition prevents a petition from being "properly filed," which in turn prevents the application of the tolling provision under § 2244(d)(2). Failure to satisfy the latter condition does not prevent statutory tolling. See <u>Satterfield</u>, 434 F.3d at 191.

In <u>Pace v. DiGuglielmo</u>, the Supreme Court addressed the question reserved in <u>Artuz</u>, "whether the existence of certain exceptions to a timely filing requirement can prevent a late application from being considered improperly filed." <u>Pace</u>, 544 U.S. at 413 (quoting <u>Artuz</u>, 531 U.S. at 8, n. 2). The Supreme Court held that "time limits, no matter their form, are 'filing' conditions," which if not met, preclude a finding that the state petition is properly filed, under the statutory tolling provision of § 2244(d)(2). <u>Pace</u>, 544 U.S. at 413-417.

The Court was guided by the common usage and understanding of the phrase "properly filed" as set forth in <u>Artuz</u>. Specifically, the Court found that,

"[i]n common understanding, a petition filed after a time limit, and which does not fit within any exceptions to that

16

limit, is no more 'properly filed' than a petition filed
after a time limit that permits no exception.  The purpose
of AEDPA's statute of limitations confirms this commonsense
reading.  On petitioner's theory, a state prisoner could
toll the statute of limitations at will simply by filing
untimely state postconviction petitions.  This would turn
§ 2244(d)(2) into a *de facto* extension mechanism, quite
contrary to the purpose of AEDPA, and open the door to
abusive delay."

Pace, 544 U.S. at 413.

The Supreme Court also commented that its decision in Carey

v. Saffold, 536 U.S. 214 (2002), pointed to the same conclusion.

In Saffold, the Court considered whether § 2244(d)(2) required

tolling during the period of time between the California

appellate court's denial of Saffold's PCR petition and his

further petition in the California Supreme Court.  The California

Supreme Court had denied the petition on the merits and for lack

of diligence, which raised the question of whether the court had

dismissed for lack of merit, for untimeliness, or for both.

Pace, 544 U.S. at 413-14 (citing Saffold, 536 U.S. at 225).

While the Supreme Court had remanded the matter, the Court

explained that, "[i]f the California Supreme Court had clearly

ruled that Saffold's 4½ month delay was 'unreasonable,' [*i.e.,*

untimely], that would be the end of the matter, regardless of

whether it also addressed the merits of the claim, or whether its

timeliness ruling was 'entangled' with the merits."  Saffold, 536

U.S. at 226.  Thus, what the Supreme Court intimated in Saffold,

it expressly held in Pace: "When a postconviction petition is

17

untimely under state law, 'that is the end of the matter' for purposes of § 2244(d)(2)." Pace, 544 U.S. at 414.

The United States Court of Appeals for the Third Circuit likewise has held that, in determining if a state PCR petition is "properly filed," the court must focus on the "state law governing when a petition for collateral relief is properly filed." Fahy v. Horn, 240 F.3d 239, 243 (3d Cir.), cert. denied, 534 U.S. 944 (2001). In Fahy, the court held that petitioner's state PCRA petition that had been dismissed by a Pennsylvania state court as time-barred was not "properly filed" under AEDPA. The Third Circuit further held that it was bound by the Pennsylvania Supreme Court's ruling that the "PCRA petition was not properly filed as a matter of state law." Fahy, 240 F.3d at 244.

The Third Circuit reiterated this holding in Satterfield v. Johnson. First, the Third Circuit distinguished between the conditions to filing and the conditions to relief, finding that:

> Untimely filing, absence of jurisdiction, failure to pay fees, and failure to obtain a requisite certificate of appealability are all examples of flaws going to the application for relief itself. [citations omitted] These requirements prevent tolling because they "go to the very initiation of a petition and a court's ability to consider that petition ... ." [citation omitted]. By contrast, a procedural bar on the relitigation of an issue raised on appeal or a bar on claims that could have been raised on direct appeal are examples of "mandatory state-law procedural requirements" that go to conditions of relief, not conditions of filing. [Artuz, 531 U.S. at 8].

18

> The mere fact that a court reviewed an application before dismissing it does not necessarily mean that an application was"properly filed."

Satterfield, 434 F.3d at 192.

After determining that Satterfield's state petition had been dismissed by the Pennsylvania state courts for failure to comply with conditions of filing imposed by state law, the Third Circuit held that a petition for relief that is improperly filed under state law may not be treated as properly filed for tolling purposes under 28 U.S.C. § 2244(d)(2). Following the logic of the Supreme Court in Pace and Merritt, the Third Circuit held:

> A rule allowing prisoners to toll AEDPA's statute of limitations by filing applications not conforming with state law would undermine the purpose of AEDPA. Petitioners could, with the exercise of some creativity, deliberately delay the onset of AEDPA's statute of limitations by filing numerous petitions "akin" to legitimate state-law petitions for post-conviction relief -- creating just the "de facto extension mechanism" feared by the Supreme Court in Pace. ...

> Where state law mandates that petitions for collateral relief be resolved through a unified system in a definite period, a practice of accepting non-conforming petitions as "properly filed" for purposes of AEDPA would encourage prisoners to abuse state post-conviction procedures, undermining the finality of state-law judgments. This is exactly what AEDPA was designed to prevent. [Carey, 536 U.S. at 220].

Satterfield, 434 F.3d at 195.

In this case, this Court finds that Hickson's second and third state PCR petitions were not properly filed, and therefore, did not serve to toll the limitations period under 28 U.S.C.

§ 2244(d)(2).  The New Jersey Appellate Division expressly held
that Hickson's second PCR petition was "filed more than two years
after expiration of the five-year period allowed under <u>Rule</u> 3:22-
12 for filing a petition for post-conviction relief."  (Ra19,
October 31, 2003 Appellate Division Opinion at pg. 3).  <u>N.J.Ct.R.</u>
3:22-12(a)[5] requires that state PCR petitions be filed within
five years from the entry of the judgment of conviction, unless
petitioner can demonstrate excusable neglect.[6]  Here, the state
appellate court found that Hickson "did not present any
justifiable excuse for this delay in raising the arguments
contained in his second petition."  (<u>Id</u>.)  The New Jersey Supreme
Court denied certification without opinion with respect to
Hickson's appeal from denial of his second PCR petition.  (Ra22).

Similarly, Hickson's third state PCR petition was found to
be untimely filed.  In an oral Opinion rendered by the Honorable
Donald R. Venezia, J.S.C., on September 28, 2004, the PCR court
found Hickson's third PCR petition to be untimely filed under

---

[5]  New Jersey Court Rule 3:22-12 provides: "(a) General Time
Limitations.  A petition to correct an illegal sentence may be
filed at any time.  No other petition shall be filed pursuant to
this rule more than 5 years after rendition of the judgment or
sentence sought to be attacked unless it alleges facts showing
that the delay beyond said time was due to defendant's excusable
neglect."

[6]  Unlike 28 U.S.C. § 2244(d)(1)(a), the limitations period
under Rule 3:22-12(a) commences upon entry of the judgment at
issue, not the conclusion of direct appellate review.

N.J. Ct .R. 3:22-12.[7]  Further, Judge Venezia held that Hickson

failed to argue any facts that would constitute exceptional

circumstances to waive the five year statute of limitations under

N.J. Ct. R. 3:22-12. (Ra51, September 28, 2004 PCR transcript at

15:1-24:7).  The PCR court's denial of Hickson's petition as

untimely was summarily affirmed by the Appellate Division on

January 26, 2006. (Ra28).  The New Jersey Supreme Court denied

certification and reconsideration without opinion, respectively,

on April 28, 2006 (Ra33) and June 23, 2006 (Ra35).

This Court concludes that Hickson's second and third PCR

petitions were not "properly filed" for purposes of § 2244(d)(2)

because they were held to be untimely under state law.[8]

Therefore, these PCR petitions did not toll AEDPA's one-year

statute of limitations and Hickson's federal habeas petition

should be dismissed as time-barred unless equitable principles

warrant tolling of the limitations period.[9]   See Pace, 544 U.S.

---

[7] "Very frankly, without getting into the merits of the
circumstances here, the statute of limitations, which is five
years, would have run on to the tail end almost of 1999.  It's
now 2004.  And if we –– we extend it beyond that to the year
2000, the statute clearly is over." (Ra51, September 28, 2004
PCR transcript at 17:3-8).

[8] Hickson contends that there are no time limits under N.J.
Court Rules 3:22-1, 3:22-2 and 3:22-4.  However, this argument
ignores the clear time limitation set forth in N.J. Ct. R. 3:22-
12.

[9] This means that the statute of limitations began to run
on July 16, 2001, and Hickson had one year from that date, or
until July 16, 2002, to file his federal habeas petition.  As

at 414 ("When a postconviction petition is untimely under state law 'that [is] the end of the matter' for purposes of § 2244(d)(2)"); <u>Satterfield</u>, 434 F.3d at 192; <u>Merritt</u>, 326 F.3d at 161(an untimely PCRA petition does not toll the federal limitations period, even where the petitioner sought to pursue his PCRA under a statutory exception to the PCRA's time bar). <u>See also</u> <u>Schlueter v. Varner</u>, 384 F.3d 69, 78-79 (3d Cir. 2004), <u>cert</u>. <u>denied</u>, 544 U.S. 1037 (2005).  Because the New Jersey courts have already determined that Hickson's second and third state PCR petitions were untimely, "it would be an undue interference for [the federal court] to decide otherwise." <u>Merritt</u>, 326 F.3d at 168; <u>Fahy</u>, 240 F.3d at 243-44.

   2.  *Equitable Tolling*

   "Equitable tolling is available only when the principle of equity would make the rigid application of a limitation period unfair."  <u>Merritt</u>, 326 F.3d at 161.  There are two general requirements for equitable tolling: "(1) that the petitioner has in some extraordinary way been prevented from asserting his or her rights; and (2) that the petitioner has shown that he or she exercised reasonable diligence in investigating and bringing the claims."  <u>Id</u>.  (citation and internal quotations and brackets omitted).  <u>See</u> <u>also</u> <u>LaCava v. Kyler</u>, 398 F.3d 271, 275-76 (3d

---

noted previously, this federal habeas petition was filed on or about August 7, 2006, more than four years after the limitations period had expired.

Cir. 2005).  In <u>Pace</u>, the Supreme Court observed that a litigant seeking equitable tolling bears the burden of establishing diligence and that "some extraordinary circumstance stood in his way."  544 U.S. at 418.  Mere excusable neglect is not sufficient.  <u>Id.</u>; <u>Miller</u>, 145 F.3d at 618-19; <u>Jones</u>, 195 F.3d at 159.

Extraordinary circumstances permitting equitable tolling have been found where:  (1) the petitioner has been actively misled; (2) the petitioner has been prevented from asserting his rights in some extraordinary way; (3) the petitioner timely asserted his rights in the wrong forum, <u>see Jones</u>, 195 F.3d at 159, or (4) the court has misled a party regarding the steps that the party needs to take to preserve a claim, <u>see Brinson v. Vaughn</u>, 398 F.3d 225, 230 (3d Cir.), <u>cert</u>. <u>denied</u>, 546 U.S. 957 (2005).[10]  Even where extraordinary circumstances exist, however, "[i]f the person seeking equitable tolling has not exercised reasonable diligence in attempting to file after the extraordinary circumstances began, the link of causation between the extraordinary circumstances and the failure to file is broken, and the extraordinary circumstances therefore did not

---

[10]  The Third Circuit has expressly held that, in non-capital cases, attorney error, miscalculation, inadequate research, or other mistakes are not the extraordinary circumstances necessary to establish equitable tolling.  <u>Johnson v. Hendricks</u>, 314 F.3d 159, 163 (3d Cir. 2002), <u>cert</u>. <u>denied</u> 538 U.S. 1022 (2003); <u>Fahy</u>, 240 F.3d at 244.

prevent timely filing." Brown v. Shannon, 322 F.3d 768, 773 (3d Cir.)(quoting Valverde v. Stinson, 224 F.3d 129, 134 (2d Cir. 2000)), cert. denied, 539 U.S. 948 (2003).

Here, Hickson argues that equitable tolling should apply because he relied upon the "care and vigilance of his trial, appellate, and post-conviction relief counsel to recognize and raise the claims he had to research and raise in his successive petitions (that were filed beyond the five year time limit)," and thus "he should not pay the price for his counsel's past failings." He simply contends that the doctrine of "excusable neglect" should apply.[11] (Petitioner's Reply at pg. 112, Docket Entry No. 12-5).

Hickson further argues that the state court should have relaxed the time-bar under the fundamental injustice exception. Again, this argument is based on the contention that petitioner should not be punished for the failure of his counsel to raise these issues in a timely manner. Hickson states that "[i]f the weight of such failings are to fall on the petitioner, then the Sixth Amendment right to effective assistance of counsel is meaningless." (Pet. Reply at pg. 113, Docket Entry No. 12-5). He also contends that he has meritorious claims of constitutional

---

[11]  See N.J.Ct.R. 3:22-12(a), which requires that state PCR petitions be filed within five years from the entry of the judgment of conviction, unless petitioner can demonstrate excusable neglect.

24

magnitude, which is a basis for allowing a PCR petition to be filed out of time.  Finally, Hickson asserts that the state court's decisions in denying his state PCR petitions were contrary to clearly established Supreme Court precedent.

This Court finds no basis for equitable tolling here. First, Hickson's contention that his counsel neglected these issues does not save this petition from dismissal as time-barred. As noted in this Opinion at fn. 10, attorney error and inadequate research are not "extraordinary circumstances" necessary to warrant equitable tolling.  See Johnson v. Hendricks, 314 F.3d 159, 163 (3d Cir. 2002), cert. denied, 538 U.S. 1022 (2003); Fahy, 240 F.3d at 244.  Further, Hickson's claims of ineffective assistance of counsel should have been raised on state PCR proceedings, and any error by Hickson's state PCR counsel in not raising all potential ineffective assistance of counsel claims is not actionable in a federal habeas petition pursuant to 28 U.S.C. § 2254(i).

Hickson's next contention that the state courts should have relaxed the state time-bar under the fundamental injustice exception also is unavailing.  However, Hickson has not demonstrated any fundamental injustice.  He simply repeats his circular argument that he relied on counsel to raise these claims, counsel failed to do so, and petitioner should not have to pay the price for counsel's failure.  In short, he contends

25

that the state courts decision denying his state PCR petitions were contrary to Supreme Court precedent, namely, his right to effective assistance of counsel guaranteed under the Sixth Amendment.

This Court finds that Hickson has not demonstrated any extraordinary circumstances, only the alleged attorney neglect in failing to raise these arguments in his PCR petitions.  Diligence also is lacking.  All of petitioner's claims of ineffective assistance of trial counsel and trial court error allegedly occurred during the trial proceedings and therefore, were discoverable and should have been presented in the first PCR petition, rather than in a piecemeal fashion.

In fact, the state appellate court expressly found that Hickson "did not present any justifiable excuse for this delay in raising the arguments contained in his second [PCR] petition." (Ra19, October 31, 2003 Appellate Division Opinion at pg. 3).

The state PCR court on Hickson's third petition also found no "exceptional circumstances" to relax the time bar.  The court stated:

> But very frankly, there is nothing in the paperwork here that I see at all which indicates, number one, that there is anything new that could not have been argued before or, number two, anything that would indicate that it is something other than the same argument in a different manner having competent counsel as was correctly indicated by the State before under Rule 3:22-5; previously adjudicated circumstances are not to be adjudicated over and over again. ...

So taking into consideration and weighing that as to whether
or not that that constitutes a circumstance of -- under --
under the case of State versus Mitchell -- exceptional
circumstances so I can waive your statute of limitation, I
would tend to agree with Mr. Schwanade, that if that be the
case, then -- then generally, the statute of limitation
should not applicable at all anytime because it really is a
rehashing of the same argument not once, but twice made.

I don't even get to the point of 3:22-4 because the
arguments were made already.  It is not something in my
opinion that constitutes new evidence.  It is not something
in my opinion that constitutes something that could not have
been found out before.  It does not constitute in my opinion
a breach of the standard of professionalism with reference
to the attorneys that were assigned to this defendant before
so as to raise another issue of incompetent counsel because
the didn't discover what it is that Mr. Hickson would like
me to believe now exists because it was argued previously,
sustained by the Appellate Division not once, but twice.

It is my opinion that none of those situations constitute
exceptional circumstances.

(Ra51, September 28, 2004 PCR hearing transcript at 18:3-19:21).

Therefore, this Court finds no extraordinary circumstances
to warrant equitable tolling in this case.  At best, it would
appear that Hickson failed to consider the time restrictions that
prohibit the filing of state PCR petitions more than five years
after entry of the judgment of conviction, and how an untimely
state PCR petition would also foreclose federal habeas review
under 28 U.S.C. § 2244(d)(2).  Ignorance of the law, even for an
incarcerated pro se petitioner, generally does not excuse prompt
filing.  Fisher v. Johnson, 174 F.3d 710, 714 (5th Cir. 1999),
cert. denied, 531 U.S. 1164 (2001).  Courts have been loathe to
excuse late filings simply because a pro se prisoner misreads the

27

law.  Delaney v. Matesanz, 264 F.3d 7, 15 (1st Cir. 2001); see also Jones, 195 F.3d at 159-60.

Therefore, because Hickson fails to demonstrate any extraordinary circumstances that would permit the equitable tolling of the one-year statute of limitations, his habeas petition must be dismissed accordingly as time-barred.

## IV.  CERTIFICATE OF APPEALABILITY

The Court next must determine whether a certificate of appealability should issue.  See Third Circuit Local Appellate Rule 22.2.  The Court may issue a certificate of appealability only if the petitioner "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

When a court denies a habeas petition on procedural grounds without reaching the underlying constitutional claim, the prisoner must demonstrate that jurists of reason would find it debatable:  (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling.  Slack v. McDaniel, 529 U.S. 473, 484 (2000).  "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further."  Id.

For the reasons discussed above, this § 2254 habeas petition is clearly time-barred.  The Court also is persuaded that reasonable jurists would not debate the correctness of this conclusion.  Consequently, a certificate of appealability will not be issued.

<u>CONCLUSION</u>

For the foregoing reasons, this Court finds that the petition for a writ of habeas corpus under 28 U.S.C. § 2254 is time-barred pursuant to 28 U.S.C. § 2244(d).  No certificate of appealability will issue pursuant to 28 U.S.C. § 2253(c)(2).  An appropriate order follows.

*s/Peter G. Sheridan*
PETER G. SHERIDAN
United States District Judge

January 13, 2008